IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs February 8, 2005

## TERRY LEE ROBINSON v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Davidson County
No. 98-B-1539     Cheryl Blackburn, Judge**

———————————

**No. M2004-00555-CCA-R3-PC - Filed May 31, 2005**

———————————

The petitioner, Terry Lee Robinson, was convicted in the Davidson County Criminal Court of first degree murder and received a life sentence. Following an unsuccessful appeal of his conviction, the petitioner filed a petition for post-conviction relief, alleging ineffective assistance of counsel at trial. The petitioner now brings this appeal challenging the post-conviction court's denial of his petition. After reviewing the record and the parties' briefs, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and J. C. MCLIN, JJ., joined.

David Martin Hopkins, Nashville, Tennessee, for the appellant, Terry Lee Robinson.

Paul G. Summers, Attorney General and Reporter; and Jennifer L. Bledsoe, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Roger Moore, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

### I.  Factual Background

This case relates to the death of the petitioner's wife, Lenora Robinson. At trial, the evidence revealed that the victim had been ill in the days leading up to her death. On December 23, 1997, the petitioner found his wife dead in their bed. An autopsy was performed on the victim, and samples of her blood were collected. Testing on the blood revealed that it contained greater than two micrograms per milliliter of cyanide. A second blood sample was tested, and cyanide was present in the amount of one microgram per milliliter. A forensic pathology expert testified for the State that cyanide is lethal at one to fifteen micrograms per milliliter and that he believed the victim died of

cyanide poisoning. A forensic pathology expert for the defense disagreed, concluding that fat in the victim's heart and liver showed she died of Reye's syndrome. The defense's expert also testified that the positive test result for cyanide in the blood was a laboratory error and that either the sample was contaminated or tested improperly. A second forensic pathology expert for the State disagreed with the defense expert, concluding that the victim died after inhaling cyanide. Finally, a clinical toxicology expert for the defense testified that when the victim's blood was tested a second time, the blood should have come from the same blood tube as the first sample. However, the laboratory had used all of the first sample and had to do the retest on blood from a second tube of blood. Several witnesses testified that the petitioner and the victim had been having marital problems and that the victim was unhappy in the marriage. The defendant testified that he did not kill his wife. The jury found the defendant guilty of first degree murder, and this court affirmed the conviction. See State v. Robinson, 73 S.W.3d 136 (Tenn. Crim. App. 2002).

The petitioner filed original and amended petitions for post-conviction relief, claiming that he received the ineffective assistance of counsel because his trial attorney failed to object when the State used its peremptory challenges to exclude males from the jury and failed to properly raise the issue on appeal. The petitioner also claimed that he received the ineffective assistance of counsel because his attorney failed to move to suppress the victim's blood test results and failed to seek sanctions against the State for using all of the first blood sample.

At the evidentiary hearing, the petitioner testified that he was serving a life sentence for first degree premeditated murder of his wife. He said that at trial, the State introduced evidence regarding blood samples that were collected from the victim after her death. The petitioner stated that his attorney requested that the defense also be allowed to test the victim's blood. However, not enough of the sample remained for defense testing. The petitioner stated that the defense's inability to test the victim's blood prejudiced him because the blood test results were the only evidence of cyanide poisoning. Regarding the jury, the petitioner testified that ten of the jurors were female. The petitioner's attorney did not object at trial to ten women being on the jury. Although the petitioner's trial attorney raised the issue of the gender ratio in the petitioner's direct appeal of his convictions, this court concluded the petitioner waived the issue because he failed to object at trial. The petitioner testified that after the jury was selected, he did not complain to his attorney about ten women being on the jury. On cross-examination, the petitioner acknowledged that he participated in jury selection, that he talked with his attorney about jury selection, and that none of the jurors said they could not be fair.

The petitioner's trial attorney testified that he had been practicing law for thirty-two years and that he represented the petitioner at trial and on direct appeal. He said that during discovery, the State gave the defense everything it had regarding the victim's blood tests. He learned that not enough blood remained for the defense to conduct independent testing. He said that the defense's experts told him they did not believe the victim's blood samples had been preserved properly. However, they also told him that the results of the victim's blood tests would have been the same even if the defense had been able to conduct its own blood tests. The petitioner's attorney saw no constitutional or statutory problem regarding the lack of a blood sample for defense testing. The petitioner's attorney testified that he excused a number of women from the potential jury and that

the petitioner participated in jury selection. Nevertheless, ten women ended were on the panel. The petitioner's attorney saw no grounds to challenge the jury selection process because jury selection in Nashville is almost "totally impartial." On cross-examination, the petitioner's trial attorney testified that the only evidence of cyanide poisoning was the victim's blood test results.

Regarding the petitioner's claim that he received the ineffective assistance of counsel during jury selection, the post-conviction court held that the large number of women on the jury was not the result of inappropriate jury selection procedures, that the petitioner's attorney did not render deficient performance during jury selection, and that the petitioner was not prejudiced by the alleged deficiency. Regarding his attorney's failure to file a motion to suppress the blood test results, the trial court noted that the blood in this case was neither lost nor destroyed by the State. Instead, the entire blood sample was used during the State's testing procedures. The post-conviction court also noted that the defense experts told the petitioner's attorney that independent testing by the defense would have resulted in the same test results. Thus, the post-conviction court held that the petitioner's attorney had no basis for filing a motion to suppress and that he did not render deficient performance.

On appeal, the petitioner claims that he received the ineffective assistance of counsel because his trial attorney failed to object to the State's use of its peremptory challenges to exclude males from the jury and that his attorney failed to raise the issue on appeal properly. He also claims that counsel failed to file a motion to suppress the blood test results or request that the State be sanctioned by the court for using all of the victim's blood during testing. He claims that he was prejudiced because the blood test results were the only evidence of cyanide being present in the victim. The State argues that the petitioner has failed to show that he received the ineffective assistance of counsel. We agree with the State.

## II. Analysis

In a post-conviction proceeding, the petitioner bears the burden of proving the grounds raised in the petition by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f) (2003). "Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998) (citing Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact. Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, we afford the post-conviction court's findings of fact the weight of a jury verdict, with such findings being conclusive on appeal absent a showing that the evidence in the record preponderates against those findings. Id. at 578.

On appeal, a claim of ineffective assistance of counsel presents a mixed question of law and fact subject to de novo review. State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). As such, the post-conviction court's findings of fact are entitled to a presumption of correctness unless the evidence preponderates against those findings. Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001).

However, a post-conviction court's conclusions of law, such as whether counsel's performance was deficient or whether that deficiency was prejudicial, are subject to a purely de novo review with no presumption of correctness. Id.

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, "the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984)).

> Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component.

Id. at 370.

To establish constitutionally deficient performance, the petitioner must demonstrate that counsel's representation fell below an objective standard of reasonableness. Strickland, 466 U.S. at 687-88, 104 S. Ct. at 2064; Burns, 6 S.W.3d at 462. Specifically, the petitioner must show that counsel's performance was not within "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). On appeal, this court will neither second guess the tactical and strategic decisions of defense counsel, nor measure the representation by "20-20 hindsight." Cooper v. State, 849 S.W.2d 744, 746 (Tenn. 1993). To establish prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068; see also Dean v. State, 59 S.W.3d 663, 667 (Tenn. 2001).

As to the petitioner's claim that his attorney rendered deficient performance during jury selection, we note that a transcript of the jury selection process was not included in the petitioner's direct or post-conviction appellate records. In any event, the petitioner has made no claim that the ten women on his jury were biased or unfair or that having ten women on the jury affected the outcome of his trial. Thus, he is not entitled to relief on this issue.

Regarding the petitioner's claim that his trial attorney was ineffective for failing to file a motion to suppress the blood test results, we note that in State v. Ferguson, 2 S.W.3d 912, 915 (Tenn. 1999), our supreme court addressed "what consequences flow from the State's loss or destruction of evidence alleged to have been exculpatory." The supreme court applied due process principles embodied in Article 1, Section 8 of the Tennessee Constitution and "promulgate[d] . . . an analysis in which the critical inquiry is: Whether a trial, conducted without the [lost or] destroyed evidence, would be fundamentally fair?" Id. at 914 (footnote omitted).

As noted by the post-conviction court in the present case, the petitioner is not claiming that the State negligently lost or destroyed evidence. Moreover, the petitioner's trial attorney testified that the State gave him all discovery in this case, including access to the results of the victim's blood tests. See Tenn. R. Crim. P. 16(a)(1)(D) (providing that upon a defendant's request, the State must allow the defendant to inspect and copy the results of scientific tests). The petitioner's attorney also testified that according to the defense's experts, the results of the blood tests would have been the same as the State's results and that the defense was more concerned with showing that the preservation of the blood samples was improper. The petitioner has failed to show that his attorney rendered deficient performance in failing to file a motion to suppress the blood test results or that the outcome of his trial would have been any different if the defense has been able to conduct its own tests.

### III. Conclusion

Based upon the record and the parties' briefs, we affirm the judgment of the post-conviction court.

_____
NORMA McGEE OGLE, JUDGE